David P. Gardner, ISB No. 5350
Carol Tippi Jarman, ISB No. 6371
Austin Strobel, ISB No. 9803
HAWLEY TROXELL ENNIS & HAWLEY LLP
412 West Center St., Ste. 2000
Pocatello, Idaho 83204
Telephone (208) 233-2001
Facsimile (208) 232-0150
dgardner@hawleytroxell.com
55981-0008

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAKOTA KING HUTTON, an individual, and EMILY THAYER, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>BLAINE COUNTY SCHOOL DISTRICT #61, an Idaho public school district; GWENCAROL HOLMES, individually and in her official capacity as Superintendent of the Blaine County School District; AMANDA LaCHANCE, individually and in her official capacity as Clerk of the School Board; HEATHER CROCKER, individually and in her official capacity as Director of Communications; TERESA MCGOFFIN, individually and in her official capacity as Director of Technology; JOHN P. PEARCE, individually and as Principal of Wood River High School; KEITH NELSON, individually and in his official capacity as Vice Principal of Wood River High School; MICHAEL GLENN, individually and in his official capacity as Principal of Silver Creek High School; and JOHN DOE, whose true name is not yet known | Case No. 1:19-cv-00116-DCN<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO Fed.R.Civ.P. 12(b)(6)** |

| |
|---|
| to the Plaintiffs, individually and in their official capacity as the person managing information on the Blaine County School District Google Drive and/or other relevant information sharing and storage systems, |
| Defendants. |

COME NOW, Defendants, by and through counsel, and hereby submit their Memorandum in Support of Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) as follows:

## I.

## INTRODUCTION

In this case, two separate plaintiffs are making claims against the Blaine County School District (hereafter "BCSD") and various governmental officials pursuant to state and federal law. The claims made by the different plaintiffs should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because the plaintiffs have failed to state valid claims for which relief may be granted. Specifically, Dakota Hutton (hereafter "Hutton"), who has admittedly graduated from high school, has made claims based upon curricular speech required by her teacher. Whereas, Emily Thayer (hereafter "Thayer"), who has also admittedly graduated from high school, has made claims based upon curricular speech required in her role as student body representative.

As will be discussed in more detail below, the claims of Hutton and Thayer for injunctive relief should be dismissed for lack of standing and due to mootness. In addition, their claims should be dismissed due to Eleventh Amendment immunity and/or qualified immunity. In the event that dismissal is not granted pursuant to Fed.R.Civ.P. 12(b)(6), the claims made by the plaintiffs must be bifurcated, pursuant to Fed.R.Civ.P. 42, as is argued by defendants on their separate Motion to Bifircate, to avoid prejudice to the defendants, to expedite and economize

discovery and trial, and because the questions of law and fact raised by Hutton and Thayer are significantly different.

## II.

## STANDARDS UNDER FEDERAL RULE 12(b)(6)

"A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint." *Sun Valley Bronze, Inc. v. Nobilus*, 2008 WL 5234055 (D. Idaho 2008). "A complaint generally must satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) to avoid dismissal under a Rule 12(b)(6) motion". *Id.* In ruling on a motion to dismiss, the Court must accept all facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Cholla Ready Mix Inc. v. Civish*, 382 F.3d 969 (9th Cir. 2004).

However, the Court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Id.* Nor is the Court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Id.* **"[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action".** See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (emphasis added). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." See *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Under Fed.R.Civ.P. 12(b)(6), the court may consider matters which are subject to judicial notice. See *Headwaters Const. Co. v. National City Mortg. Co.*, 720 F. Supp. 2d 1182, 1187 (D.

Idaho 2010). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Id.; citing Disabled Rights Action Comm. v. Las Vegas Events, Inc.* 375 F.3d 861, 866, (9th Cir. 2004).

## III.

## FACTS ALLEGED IN THE COMPLAINT

### A. Hutton's Alleged Facts.

1. In the Fall of 2017, Hutton was given a class assignment in an AP Government /Social Studies class which required her to develop an opinion poll. (*See* Complaint, Dkt. 1, ¶¶ 2, 31, and 32 along with Exhibit "1" thereto).

2. Hutton developed an opinion poll which questioned the effectiveness of the Blaine County School District Superintendent, GwenCarol Holmes, and she disseminated the poll to nonmembers of the BCSD who had access to the BCSD's Google Drive accounts and Google forms. (*Id*; *see also* ¶ 33).

3. Hutton's poll was taken off of the BCSD Google Drive system managed by the BCSD, and Hutton was given no grade for her assignment. (*Id*; *see also* ¶¶ 3, 26, 39 and 41).

4. Hutton seeks injunctive relief, declaratory relief, monetary damages, and attorney's fees, claiming that the BCSD, along with defendants GwenCarol Holmes, Teresa McGoffin, John Pearce, Keith Nelson, and Heather Crocker conspired to violate her constitutional rights by deleting the opinion poll. (*Id.* at ¶¶ 79-83).

5. Hutton graduated from Wood River High School and now attends college at Northwest Nazarene University. (*Id.* at ¶ 20).

### B. Thayer's Alleged Facts.

1. In the Fall of 2017, Thayer submitted a report known as a Wood River High School Student Board Representative Liaison Report to student liaison for the BCSD, Sera Begay, regarding concerns with WRHS's chosen graduation date that year. (*See* Complaint, Dkt. 1, ¶ 4, 5, and 59). This report was directed to the BCSD Board of Trustees. (*Id.* at ¶¶ 55 and 56). Ms. Thayer contends that this report was in compliance with the BCSD's policies. (*Id.*).

2. Thayer speculates that student liaison, Ms. Begay, did not give Thayer's complete and un-redacted report to the BCSD Board of Trustees in the form which she had wanted for it to be presented to them as a result of concerted actions taken by defendant GwenCarol Holmes and Amanda LaChance, as well as by non-parties, Mike Glenn, Julia Grafft and Ellen Mandeville. (*Id.* at ¶¶ 59-70).

3. Thayer seeks injunctive relief, declaratory relief, monetary damages, and attorney's fees, claiming that the BCSD, along with defendants GwenCarol Holmes and Amanda LaChance conspired with nonparties to violate her constitutional rights by preventing her original written report from being submitted by Ms. Begay to the Board of Trustees. (*Id*).

5. Thayer graduated from Wood River High School and now attends college at California Polytechnic State University San Luis Obispo. (*Id.* at ¶ 20).

### IV. ARGUMENT

### A. Eleventh Amendment Immunity.

Claims under 42 U.S.C. § 1983 are limited by the scope of U.S. Const. Amend. XI. *Doe v. Livermore Nat'l Lab*, 131 F.3d 836 (9th Cir. 1997). The Eleventh Amendment affords protection from suit in federal court to states and state officials on state claims whether money damages or prospective injunctive relief is requested. *Id; citing Pennhurst v. State Sch. & Hosp.*

*v. Halderman*, 465 U.S. 89, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). "Absent unequivocal consent by the state, or congressional authorization, the Eleventh Amendment bars suits in federal court against the State or its agencies for all types of relief". *Krainski v. Nevada*, 616 F.3d 963, 967 (9th Cir. 2010). Immunity under the Eleventh Amendment is a question of law, which an appellate court reviews *de novo*. *Doe*, supra, at 838.

Defendants recognize that courts of the Ninth Circuit have held that the Eleventh Amendment does not bar individual capacity suits or a request for prospective injunctive relief, based on federal law, against a state official acting in his or her official capacity. *T.M. ex. rel Benson v. San Francisco Unified Sch. Dist.*, 2010 WL 291828 (N.D. Cal. 2010).

The issue as to whether a school district such as the BCSD is an arm of the State of Idaho does not appear to have been clearly decided under modern Ninth Circuit standards. (*See Common Sch. Dist. No. 61 in Twin Falls Cty. v. Twin Falls Bank & Tr. Co.*, 50 Idaho 711, 4 P.2d 342, 343 (1931) (noting that "courts have universally held that a school district is an agency of the state, created by law solely for the operation of a school system for the public benefit, and derives all of its powers from statute, being limited to such as are deemed necessary for that purpose."). However, review of the modern standards applied in pertinent cases obviates a finding that the plaintiffs' claims against BCSD and defendants in their official capacities must be dismissed due to Eleventh Amendment immunity.

Specifically, the Ninth Circuit considers the following "*Mitchell*"[1] factors in deciding whether an entity is an arm of the state" and thus protected from suit in federal court by the 11th Amendment:

---

[1] These factors were first addressed by the Ninth Circuit in *Mitchell v. Los Angeles Comm. Coll. Dist.*, 861 F.2d 198 (9th Cir. 1988).

> (1) whether a money judgment would be satisfied out of state funds, (2) whether
> the entity performs central governmental functions, (3) whether the entity may sue
> or be sued, (4) whether the entity has the power to take property in its own name
> or only the name of the state, and (5) "the corporate status of the entity.

*Beenjes v. Placer Cy. Air Pollution Control Dist.*, 397 F.3d 775, 778 (9th Cir. 2005); *see also Holz v. Nenana City Pub. Sch. Dist.*, 347 F.3d 1176, 1180–81 (9th Cir. 2003). These factors must be analyzed "in light of the way [Idaho] law treats the governmental agency." *Id.*; *see also Regents of the Univ. of Cal.*, 519 U.S. at 429 n. 5, 117 S.Ct. 900 (whether an entity is an arm of the state "can be answered only after considering the provisions of state law that define the agency's character"). The Court in *Beenjtes* gave "additional weight" to the first factor "because 'the impetus of the Eleventh Amendment is the prevention of federal-court judgments that must be paid out of the state's treasury." *Id*; quoting *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1041 (9th Cir. 2003).

On the issue of whether a school district is considered an "arm of the state," there are Ninth Circuit decisions that go both ways, however, the case of *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248 (9th Cir. 1992) is instructive. In that case, the Ninth Circuit found that California school districts are "arms of the state" given the unique structure of the California school system, and because a judgment against the school would be satisfied out of state funds.

This was the same reasoning applied by the Honorable B. Lynn Winmill in the case of *Sadid v. Idaho State University*, 837 F. Supp. 2d (D. Idaho 2011) in finding that Idaho State University is an arm of the state of Idaho and immune from suit in federal court under the Eleventh Amendment. Judge Winmill analyzed the *Mitchell* factors, emphasizing that:

> Although ISU is an entity that experiences a certain amount of autonomy in
> deriving from it ability to generate non-state revenues and its delegation as an
> "independent legal entity", the balance of the *Mitchell* factors demonstrate that it
> is an arm of the State of Idaho.

The same finding must be made in this case because, just like Idaho State University, the BCSD may have autonomy in deriving funds from non-state revenues and as an independent legal entity under Idaho Code §30-310 et seq., but a judgment against the BCSD would be satisfied out of state funds. For these reasons, the claims against BCSD and defendants in their official capacities must be dismissed pursuant to the Eleventh Amendment.

**B.     Lack of Standing and Mootness on Claims for Injunctive Relief.**

Standing and mootness are jurisdictional issues deriving from the requirement of a case or controversy under Article III. *Cole v. Oroville Union High School District*, 228 F.3d 1092, 1098 (9th Cir. 2000); citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 120 S. Ct. 693, 703-04, 145 L. Ed. 2d 610 (2000). It is well-settled that once a student graduates, he or she no longer has a live case or controversy justifying declaratory or injunctive relief against a school's action or policy. *Id.* As it is undisputed that Hutton and Thayer have both graduated from Wood River High School and have gone on to pursue college education at different institutions, there is no disputing that their claims for injunctive relief are precluded and must be dismissed for failure to state a valid claim for which relief may be granted under Fed.R.Civ.P. 12(b)(6). (*See* Complaint, Dkt. 1, at ¶¶ 20 and 21 as well as Pgs. 18-19, and 21).

**C.     Qualified Immunity.**

In *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565, (2009), the Supreme Court made the following key point on questions to be resolved in a 42 U.S.C. §1983 suit:

> Because qualified immunity is "an immunity from suit rather than a mere defense to liability... it is effectively lost if a case erroneously proceeds to trial".

*Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L Ed. 2d 411 (1985) (emphasis deleted). Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was the desire to ensure that "insubstantial claims" against government officials will be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640, n. 2, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). Accordingly, "we repeatedly have stressed the importance of resolving qualified immunity questions at the earliest possible state of litigation*." Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (*per curiam*).

In *Rosenberger v. Kootenai County Sheriff's Dep't*, 140 Idaho 853, 103 P.3d 466 (2004), the Idaho Supreme Court, quoting *Mitchell v. Forsyth*, supra, held that if qualified immunity is requested in a suit, a ruling on the issue of qualified immunity should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Id.* at 857, 470.

In *Frudden v. Pilling*, 877 F.3d 821,831 (2017) the Ninth Circuit clarified the two-part analysis it applies in a qualified immunity case as follows:

> First, we decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right. Second, we decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

(Internal quotations and citations omitted).

Said differently, "a governmental official, such as a teaching institution executive, will be entitled to immunity for discretionary actions or orders in the conduct of his or her office **so long as the actions or orders do not violate clearly established statutory or constitutional rights of which a reasonable person would have knowledge**". *See Stock v. Funston*, 15 F.3d 1090 (9th Cir. 1994) (emphasis added); citing *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727 (1982).

### 1. Hutton's 42 U.S.C. §1983 Claims.

There is no disputing that the defendants are entitled to qualified immunity on Hutton's 42 U.S.C. §1983 claims against them in their official and individual capacities for violation of the First and Fourteenth Amendments as well as her claims based upon the Idaho Constitution. This is because Hutton's factual allegations, even if taken as true, do not establish that defendants violated her clearly established constitutional rights.

While the Supreme Court has held that the state does not have a monopoly on the inculcation of values or beliefs, the Court has recognized that schools have certain obligations that make the educational environment a special environment for First Amendment jurisprudence.[2] The general parameters of protected student speech have been discussed in at least four major decisions.[3] However, this case is most factually similar to *Hazelwood School District, et al. v. Kuhlmeier, et al*, 484 U.S. 260, 108 S. Ct. 562, 98 L. Ed. 2d 592 (1988).[4] Much like the student in *Hazelwood*, Hutton is claiming that school officials violated her constitutional rights by redacting her speech made in a school-sponsored forum. Just as *Hazelwood's* claims failed as a matter of law, so do Hutton's.

---

[2] *E.g., Morse v. Frederick*, 555 U.S. 393, 421, 127 S. Ct. 2618, 2636, 168 L. Ed. 2d 290 (2007) (stating that "while children assuredly do not 'shed heir constitutional rights... at the schoolhouse gate,'....the nature of those rights is what is appropriate for children in school").

[3] *Morse v. Frederick*, 555 U.S. 393, 421, 127 S. Ct. 2618, 2636, 168 L. Ed. 2d 290 (2007); *Hazelwood School District, et al. v. Kuhlmeier, et al*, 484 U.S. 260, 108 S. Ct. 562, 98 L. Ed. 2d 592 (1988); *Tinker v. Des Moines Independent School Dist.*, 393 U.S. 503, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969); *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 106 S. Ct. 3159, 92 L. Ed. 2d 549 (1986).

[4] *See also Brown v. Li*, 308 F.3d 939 (9th Cir. 2002) (applying the *Hazelwood* standard to a similar class assignment in the university setting and finding that the school officials had acted in conformity with the First Amendment when they declined to approve the student's assignment based upon legitimate pedagogical objectives; specifically, teaching the plaintiff the proper format for a scientific paper).

As *Hazelwood* definitively shows, Hutton's curricular speech is not "free speech" entitled to constitutional protection. In *Hazelwood*, the Supreme Court differentiated the type of speech at issue from the speech involved in the earlier case of *Tinker v. Des Moines Independent School Dist.*, 393 U.S. 503, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969). The Supreme Court underscored that "the question whether the First Amendment requires a school to tolerate particular student speech--- the question that we addressed in *Tinker*--- is definitively different from the question whether the First Amendment requires a school to affirmatively promote particular student speech." *Id.* at 570, 270-71.

In *Hazelwood*, the Supreme Court stated that:

> A school must be able to set high standards for the student speech that is disseminated under its auspices--- standards that may be higher than those demanded by some newspaper publishers or theatrical producers in the "real" world --- any may refuse to disseminate student speech that does not meet those standards.

*Id.* at 570, 271.

> A school need not lend its name and resources to the dissemination of student expression. Instead, we hold that educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns. This standard is consistent with our oft-expressed view that the education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local school officials and not of federal judges.

*Id.* at 571, 273.

Hutton admits that the opinion poll that she created as a classroom assignment from her teacher was disseminated to others outside of Wood River High School, but not the general public, using the BCSD moderated Google Drive accounts and Google forms. (Dkt. 1 at ¶ 26 and 33). As noted above, the Court may take judicial notice of the BCSD policies regarding this

moderated system and all other policies which are publicly available on the BCSD website without converting this to a summary judgment motion. There is no question under *Hazelwood*, that Hutton's teacher and other BCSD officials had the right of editorial control over the speech because it bore the imputer of the school.

Although decided under a different standard applied to faculty speech, the case of *Idaho State University Faculty Ass'n for the Preservation of the First Amendment v. Idaho State University*, 857 F. Supp. 2d 1055 (2012) offers additional support for defendants' position. In that case, the plaintiffs argued that their freedom of expression had been violated because they were prohibited from sending email messages through ISU's moderated listserv called facultymemos. In finding that the plaintiffs' request for injunctive relief based upon alleged violations of their First and Fourteenth Amendment rights was without merit, the Honorable B. Lynn Winmill, relying heavily on the case of *Downs v. Los Angeles Unified School District*, 228 F.3d 1003 (9th Cir. 2000), denied the plaintiffs' request for injunctive relief because "sending a message through the university's facultymemos had the effect of making the email appear as an administration-sanctioned communication". *Id.* at 1064.

The same is true in this case. By using the BCSD Google Drive account to disseminate her opinion poll, the communication by Hutton had the effect of making it appear that Wood River High School's administration had sanctioned the communication, which was akin to a performance evaluation of Superintendent Holmes. The opinion poll disseminated by Hutton was subject to control by school officials because a performance evaluation is precisely the type of information which is subject to privacy controls under the Idaho Public Records Law; namely, I.C. 74-106. The BCSD officials had the legitimate pedagogical concern to ensure that its performance evaluations of school officials would not be done by a student playing speaker for

the school. Accordingly, Hutton's First Amendment claim fails as a matter of law and must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

Similarly, Hutton's Fourteenth Amendment claim also fails as a matter of law. The procedural due process guarantees of the Fourteenth Amendment apply only when a constitutionally protected liberty or property interest is at stake. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Hutton had no protected property interest in the right to use BCSD's Google Drive system because it was admittedly moderated so that the school could ensure which messages it will (or will not) convey through the system. As no protected property interest was violated, Hutton's Fourteenth Amendment claim must also be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

### 2. Thayer's 42 U.S.C. §1983 Claims.

The Supreme Court has repeatedly emphasized the need for affirming comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools. *Tinker v. Des Moines Independent School Dist.*, 393 U.S. 503, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969).

As discussed above, Thayer's claim rests solely upon speculation that her complete report was not given to the Board of Trustees by student liaison, Sara Begay. Even if such were deemed true, that does not establish a violation by defendants of a clearly established constitutional right of Thayer of which they should have been reasonably aware. Precedent does not establish that a school official must force a student liaison to present a report to school officials. Thayer has not alleged that she was denied the ability to give her particular report in its complete form to the Board of Trustees. It is quite the opposite as she admittedly did voice her desire to change the graduation date for Wood River High School that year through her own

presentation of this school-sponsored speech to the Board of Trustees. (See Dkt. 1, Exhibit "2"). On this basis alone, Thayer's First and Fourteenth Amendment claims fail as a matter of law.

But even assuming arguendo that the school redacted Thayer's report as is alleged, Thayer's claim fails whether the *Hazelwood* standard is applied or whether the *Tinker* standard is applied. Again, under *Hazelwood*, "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns". *Id.* at 571, 273. Clearly, a school has legitimate pedagogical concerns regarding the timing of graduation and the manner in which it will be done. The same is true with respect to the school's concerns over how reporting by student representatives will be given to the Board of Trustees on this issue.

However, even if this Court finds that *Tinker's* standard is more appropriate for analyzing Thayer's speech, "a school official does not violate a student's constitutional right to free speech if he or she reasonably believes that the speech might cause substantial disruption of, or material interference with, school activities". *See Tinker* at 509, 738. This is particularly true when the speech is through a school-sponsored forum. *See Morse v. Frederick*, 555 U.S. 393, 421, 127 S. Ct. 2618, 2636, 168 L. Ed. 2d 290 (2007) (wherein dissent discussed the effect of *Tinker* on students' speech rights in a different context and the erosion of *Tinker's* holding due to the court's long-standing adherence to the idea that local school boards, not courts, should determine what pedagogical interests are "legitimate" and what rules "reasonably relat[e]" to those interests).

The graduation date is a significant school activity which requires planning on many levels. It would be reasonable to infer that a school official would legitimately be concerned about substantial disruption of graduation if the school's message on when it would be held was distorted or confused due to Thayer's speech. While defendants do not concede that *Tinker* applies to Thayer's speech, even if this more stringent standard is applied to the speech at issue, legitimate pedagogical concerns would justify the restrictions placed upon the manner in which the speech was to be presented. Rather than in an un-redacted report, Thayer was admittedly given the chance to report her concerns to the Board of Trustees at an open meeting. This was consistent with the BCSD's policy, for which the Court may take judicial notice; namely, 220.10. This policy provides in significant part as follows:

> The Student Board Representative shall, where applicable, serve an informational role on matters brought before the Board in open session. The Student Board Representative may recommend motions that may be acted upon by the Board on subject matters not-relating to individual personnel or individual student issues. **He/she is welcomed and encouraged to engage in Board discussion and questioning of issues that come before the Board during open session.**

(Emphasis added).

As Thayer was given the opportunity to give the speech contemplated in her role as student board representative, Thayer's 42 U.S.C. § 1983 First Amendment claim must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). Thayer's Fourteenth Amendment claim also fails as a matter of law because, again, the procedural due process guarantees of the Fourteenth Amendment apply only when a constitutionally protected liberty or property interest is at stake. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Thayer had no protected property interest in the right to present an un-redacted report, through Ms. Begay, to the Board of Trustees.

Even if the Court were to find that Thayer had a protected property interest, the question then is "what process was due". *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d. 494 (1985). "The 'root requirement' of the Due Process Clause is that an individual be given an opportunity for hearing before being deprived of a significant property interest" *Id.* at 542, 1493. The facts alleged by Thayer show that, not only did she fail to request any grievance hearing, she gave her un-redacted report voicing all of her concerns to the Board using its moderated BCSD Google Drive email system[5] In addition, while Thayer alleges that BCSD changed its policies due to her speech is baseless as the policies delineated on the BCSD website confirm that open meetings are welcomed and remain the forum for voicing student representative's concerns, while the Board of Trustees still has the reserved right to take up matters in executive session. As there is no genuine basis for Thayer to claim that she was somehow denied due process, her Fourteenth Amendment claim must also be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

### D. Declaratory Judgment Request and State Law Claims.

As neither plaintiff is able to establish a plausible constitutional violation by these defendants, the requests for declaratory relief under 28 U.S.C. § 2201 and for additional relief under the Idaho Constitution must also be denied, and those claims must also be dismissed, pursuant to Fed.R.Civ.P. 12(b)(6) because they are futile. If the Court determines that any state law claims stated in the Complaint survive this Motion to Dismiss, the Court should decline exercising supplemental jurisdiction over those claims. *Green Solutions Recycling, LLC v. Reno Disposal Company, Inc.*, 359 F. Supp. 3d 960

---

[5] *See* Dkt. 1, ¶¶ 8, 68 as well as Exhibit "2".

(D. Nevada 2019); citing 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction"). Where the only state law claims which appear on the face of the Complaint relate to alleged constitutional violations under the Idaho Constitution, those claims should be dismissed for all of the reasons above or they should be dismissed without prejudice based upon the grounds set forth in 28 U.S.C. § 1367(c).

## V.

## CONCLUSION

Although the plaintiffs have leveled what appear to be serious claims in their Complaint against the BCSD and numerous governmental officials, the alleged facts by each plaintiff fail to demonstrate that either of them are plausibly entitled to relief. The plaintiffs' claims should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because: 1) Eleventh Amendment immunity bars their claims; 2) standing and mootness preclude their claims for injunctive relief; 3) qualified immunity precludes their claims as defendants violated no constitutional rights for which they should have been reasonably aware; 4) declaratory relief and relief based upon the Idaho Constitution may not be granted for the reasons outlined herein-above; and, 5) the court should decline to exercise supplemental jurisdiction over the state law claims based upon 28 U.S.C. § 1367.

DATED this 30 day of May, 2019.

Hawley Troxell Ennis & Hawley LLP

By _____
David P. Gardner – Of the Firm

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the ___30___ day of May, 2019, I filed the foregoing **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Samuel L. Linnet, Esq.
sam@linnetlaw.com

_____
David P. Gardner